UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                                      :
GEORGIANA ALLEN,                                      :
                                                      :
                              Plaintiff,              :       15 Civ. 9965 (KPF)
                                                      :
              v.                                      :       OPINION AND ORDER
                                                      :
A.R.E.B.A. CASRIEL, INC., and WARREN                  :
ZYSMAN,                                               :
                                                      :
                              Defendants.  :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 12, 2017

KATHERINE POLK FAILLA, District Judge:[1]

Plaintiff Georgiana Allen initiated this action against her former

employer, A.R.E.B.A. Casriel, Inc. ("ACI"), and its Chief Executive Officer,

Warren Zysman (collectively, "Defendants"), alleging discrimination under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title

VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to

634 (the "ADEA"), the Americans with Disabilities Act of 1990, 42 U.S.C.

§§ 12112 to 12117 (the "ADA"), and the New York City Human Rights Law, N.Y.

City Admin. Code §§ 8-101 to 8-131 (the "NYCHRL").  In broad summary, she

claims that ACI failed to provide proper accommodations for her disability and

discriminated against her on the basis of her race and age by disciplining her

for her work and denying her requests for leave.

---

[1]     The Clerk of Court is directed to modify the caption as provided here, to account for the
        proper spelling of Defendant Zysman's surname.

Defendants have moved for summary judgment. For the reasons set forth in this Opinion, Defendants' motion is granted in part and denied in part. Specifically, the Court dismisses all of Plaintiff's claims of race- and age-based discrimination, and all claims against Defendant Zysman, and sustains Plaintiff's claims of failure to accommodate her disability brought against ACI pursuant to the ADA and the NYCHRL.

## BACKGROUND[2]

### A. Factual Background

#### 1. Plaintiff's Employment at ACI and Her Disability

Plaintiff is African-American and 63 years old. (Pl. 56.1 Opp. ¶ 5). For nearly 20 years, she was employed at ACI, a private addiction treatment center that provides inpatient and outpatient services. (*Id.* at ¶¶ 1-2). Plaintiff was

---

[2]     This Opinion draws on facts from the Amended Complaint ("FAC" (Dkt. #8)); the parties' submissions in connection with the instant motion, including Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1" (Dkt. #49)), and Plaintiff's Rule 56.1 Statement of Undisputed Material Facts ("Counterstatement" or "Pl. 56.1 Opp." (Dkt. #56)), which, while not so captioned, is a counterstatement to Defendants' submission. The Court also cites to the Declaration of Diane Windholz in Support of Defendants' Motion for Summary Judgment ("Windholz Decl." (Dkt. #45)) and the exhibits attached thereto ("Windholz Decl., Ex. [ ]"), the Declaration of Amy Sirken in Support of Defendants' Motion for Summary Judgment ("Sirken Decl." (Dkt. #47)), the Supplemental Declaration of Amy Sirken in Support of Defendants' Motion for Summary Judgment ("Sirken Supp. Decl." (Dkt. #58)), the Declaration of Dolores Lopresti in Support of Defendants' Motion for Summary Judgment ("Lopresti Decl." (Dkt. #48)), the Amended and Supplemental Declaration of Dolores Lopresti in Further Support of Defendants' Motion for Summary Judgment ("Lopresti Supp. Decl." (Dkt. #61)), the Declaration of Georgiana J. Allen in Opposition to Defendants' Motion for Summary Judgment ("Allen Decl. (Dkt. #55)).

For ease of reference, the Court refers to Defendants' brief in support of their motion for summary judgment as "Def. Br." (Dkt. #44), Plaintiff's opposition brief as "Pl. Opp." (Dkt. #54), and Defendants' reply brief as "Def. Reply" (Dkt. #57). The Court also refers to the transcript of Plaintiff's deposition — which is included as an exhibit to the Windholz Declaration — as "Pl. Dep."

hired in February 1996 and began working as a Credentialed Alcoholism and Substance Abuse Counselor ("CASAC") in 2002. (*Id.* at ¶¶ 6-7).

As a CASAC, Plaintiff was required to satisfy the "twelve core functions of a substance abuse counselor"; these functions included patient intake and assessment, counseling, case management, crisis intervention, making referrals, and recordkeeping. (Pl. 56.1 Opp. ¶¶ 9-10). To satisfy these functions, Plaintiff was required, among other things, to create "individualized in-patient rehabilitation and detoxification" programs. (*Id.* at ¶ 15). To prepare the programs, in turn, Plaintiff was required to document conversations with patients as well as the outcome of patients' participation in treatment programs. (*See id.* at ¶¶ 18-24).

In 2005, Plaintiff was diagnosed with macular degeneration, and she was ultimately declared legally blind in both eyes. (Def. 56.1 ¶ 25; Pl. Dep. 58:2-3, 58:12-14, 250:10-12). She informed ACI's Human Resources Department of her condition. (Pl. Dep. 58:20-59:6). In spite of her disability, Plaintiff was able to perform her job functions at ACI with the assistance of a closed-circuit television monitor ("CCTV"), which she obtained from the New York State Office of Children and Family Services. (Pl. 56.1 Opp. ¶ 26).[3] A CCTV is "a monitor that enlarges" hard-copy documents (Pl. Dep. 59:24-25), and Plaintiff would use this to view and fill out patient forms by hand (*id.* at 59:22-23).

---

[3]    Plaintiff admits that the CCTV was sufficient to accommodate her disability until 2013, and she is clear that her ADA claim arises from events beginning in 2013. (Pl. 56.1 Opp. ¶ 26; Pl. Dep. 61:11-20, 67:4-25).

## 2.    ACI's Patient Forms

In 2013, ACI brought its business into the 21st Century and began to process patient documents electronically.  (Pl. 56.1 Opp. ¶ 28).  The CCTV, however, could not assist Plaintiff with electronic documents; for that, she needed software on her computer that would enlarge the interface so she could see the contents displayed on the screen.  (*Id.* at ¶ 27).  Plaintiff requested that ACI install a program called ZoomText on her computer.  (*Id.* at ¶ 29).  After a period of delay, ACI made several attempts to do so but, for reasons not entirely clear from the record, the installation did not work.  (*Id.* at ¶ 30).  Because Plaintiff could not complete patient paperwork on her computer without ZoomText, she was permitted to continue filling out forms manually.  (*Id.* at ¶ 31).

In 2014, ACI began using new and revised patient forms to remain in compliance with regulations promulgated by the New York State Office of Alcoholism and Substance Abuse Services ("OASAS"), which was set to conduct a compliance review at ACI in September 2014.  (Pl. 56.1 Opp. ¶¶ 32, 35).  These new forms were only maintained electronically, and ACI counselors would fill them out on computers.  (*See id.* at ¶ 51).  Notably, the new forms "required counselors to use analytical skills in their assessment of patients," and to "provide more insight into their conversations with patients," in contrast to the old forms, which were "much more simplistic."  (Sirken Supp. Decl. ¶¶ 5-6).

After these new forms were implemented, ACI again permitted Plaintiff to continue filling out patient forms by hand. (Pl. 56.1 Opp. ¶ 51). Plaintiff vigorously contests the sufficiency of this accommodation. She explains that filling out the new forms by hand "took longer than the computer" and "cause[d] an overload and backed up work," such that she "could not finish all as quickl[]y as [her] co-workers." (*Id.* at ¶¶ 51, 56). In short, Plaintiff claims that ACI's failures to train her properly and to install software that would enable her to fill out the forms on the computer caused her to fall behind in her paperwork, which in turn caused her to receive (wrongfully, she maintains) multiple disciplinary warnings and suspensions. (Pl. Dep. 170:9-172:5, 176:4-9).

### 3. Plaintiff's Training on ACI's New Patient Forms

In July 2014, ACI implemented a training program for CASACs to learn about the new forms. Plaintiff attended a group meeting where the new forms were discussed. (Def. 56.1 ¶ 33; *see also* Windholz Decl., Ex. F).[4] CASACs were promised individual training sessions, and several African-American ACI counselors over the age of 40 were given individual training. (Windholz Decl., Ex. H; *see also* FAC, Ex. B; Pl. Dep. 92:20-94:1, 162:19-164:21; Lopresti Decl. ¶ 9).

---

[4]     Plaintiff disputes Defendants' statement that she "recall[s] attending a meeting where ACI introduced the new and revised patient forms" (*compare* Def. 56.1 ¶ 33, *with* Pl. 56.1 Opp. ¶ 33), but her conclusory denial does not suffice. Plaintiff's deposition testimony makes clear that she was, indeed, at a meeting with other ACI counselors in July 2014 at which the new forms were discussed. (Pl. Dep. 149:5-154:25).

Plaintiff testified that she participated in a July 2014 meeting that "was supposed to have been" an individual training session, but that was ineffectual because Plaintiff could not see the forms being discussed during the training:

> Q: Okay. You recall going to the compliance office on the first floor in July 2014?
>
> A: Yes.
>
> Q: And that was for an individual session, wasn't it?
>
> A: It was supposed to have been.
>
> Q: But you went and it wasn't an individual session?
>
> A: You can't give me an individual session unless I'm under my CCTV. She didn't have a CCTV in her office, so she's talking to me, and that was that —
>
> Q: Did you ask —
>
> A: — and trying to show me.
>
> Q: Did you have to go back to your work-station so you could use the CCTV?
>
> A: Yes.
>
> Q: And who did you speak to?
>
> A: Who did I speak to that was giving me training? It was Miss Amy [Sirken], and someone came in, this other lady, I'm not sure who she is, and it took less than five minutes. It didn't even happen.

(Pl. Dep. 157:20-158:16).

While ACI claims it conducted an individual training session for Plaintiff on July 30, 2014, Plaintiff denies having attended that session — and, indeed, claims that the signature on the relevant sign-in sheet is a forgery. (*Compare* Def. 56.1 ¶ 34, *with* Pl. 56.1 Opp. ¶ 34; *see also* Pl. 56.1 Opp. ¶ 38; Windholz

Decl., Ex. G).  Several months later, in January 2015, ACI conducted training sessions for CASACs to learn about the Recovery Care Plan.  (Pl. 56.1 Opp. ¶ 41).  Plaintiff attended a group training session with seven other ACI CASACs on January 8, 2015.  (*Id.*; Windholz Decl., Ex. I).  Again, Plaintiff contests the sufficiency of her training because she "could not read the forms or understand what to do with the forms."  (Pl. 56.1 Opp. ¶ 41).

### 4. Plaintiff's Receipt of Disciplinary Warnings and a Performance Improvement Plan

That same day, January 8, 2015, Plaintiff received a verbal warning from Amy Sirken regarding her failure to submit daily productivity sheets. (Windholz Decl., Ex. J).  The form memorializing this warning notes, "[i]f G. Allen does not provide these sheets daily, G. Allen will face disciplinary action and his/her direct supervisor will be informed about their continued insubordination." (*Id.*).  The form attached a letter from KC Jones, Director of Medical Records, stating that she had informed Plaintiff of this requirement at least five times.  (*Id.*).  Plaintiff received a second warning for incomplete patient forms and a concomitant one-day suspension on January 29, 2015 (*id.* at Ex. K), and a third warning on February 5, 2015 (*id.* at Ex. L).

The day after receiving her third warning, on February 6, 2015, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") alleging discrimination on the basis of her age, race, and disability. (Windholz Decl., Ex. B).  Plaintiff received a fourth warning — which is incorrectly marked as a third warning — on February 24, 2015.  (*Id.* at Ex. M).

This warning noted that "43% of case records were missing elements ... required by regulation," and, further, that "43% of the patients listed on [Plaintiff's] productivity log on 2/17/2015 ... did not have progress notes in those charts.  Daily progress notes are required as per regulatory standards." (*Id.*).

ACI subsequently placed Plaintiff on a Performance Improvement Plan ("PIP") on February 26, 2015, which plan recited that "[f]ailure to comply ... may result in termination of [Plaintiff's] employment."  (Windholz Decl., Ex. N).  Plaintiff was provided with a copy of the PIP on March 3, 2015.  (*Id.* at Ex. O; Pl. Dep. 223:21-224:1).[5]

Also on March 3, 2015, Plaintiff had an individual training session with ACI trainers Katrina Daae and Farhaana Zainul to discuss the Recovery Care Plan.  (Windholz Decl., Ex. P; Pl. Dep. 169:8-13, 22-25).[6]  This training session was conducted in Plaintiff's office, where she had access to the CCTV monitor she could use to enlarge the forms being discussed.  (Pl. Dep. 170:1-5).[7]  The parties dispute whether this accommodation was sufficient: While ACI contends that Plaintiff could use her CCTV during this training, Plaintiff states

---

[5]     Plaintiff contests this fact in her Counterstatement.  (*See* Pl. 56.1 Opp. ¶ 58).  However, Plaintiff's deposition testimony, coupled with the notation that she "refused to sign" her PIP form (Windholz Decl., Ex. O), makes plain that Plaintiff was in fact shown a copy of, or at least made aware of, the PIP.

[6]     Plaintiff testified at her deposition that she also received an individual training session with Daae and Zainul in February 2015 for 35 minutes on a topic that she cannot recall.  (Pl. Dep. 230:20-232:8).  There is no evidence in the record, beyond Plaintiff's passing reference in her deposition, to substantiate this session.

[7]     Plaintiff denies this fact in her Counterstatement (*see* Pl. 56.1 Opp. ¶ 60), but her objection is unsupported and her deposition testimony confirms that this fact is true. The Court will deem this fact undisputed for purposes of this motion.

that, without the ZoomText software, she could not see the new ACI patient forms as they presented on a computer and, thus, could neither fully appreciate the intricacies of the electronic forms, nor determine whether they differed from the forms she was filling out by hand. (*Id.* at 170:3-8, 172:13-24). Plaintiff further claims that this training session "was mandated to be 1½ hours" (Pl. 56.1 Opp. ¶ 63), but was only 45 minutes long, which she maintains was "not enough with so much to cover on documentation" (*id.* at ¶¶ 59, 63). Finally, Plaintiff contends that, as part of her PIP, she arranged for weekly training sessions with Daae and Zainul going forward, but those sessions were never scheduled. (*Id.* at ¶ 61; Pl. Dep. 219:21-220:9).

ACI gave Plaintiff an attendance sheet to sign at the March 3, 2015 training, but she refused to sign on the advice of her union. (Windholz Decl., Ex. P; Pl. 56.1 Opp. ¶ 62). On March 4, 2015, ACI issued a fifth warning to Plaintiff, this time for refusing to sign the training attendance sheet. (Pl. Dep. 227:20-229:18).[8] Plaintiff received a sixth warning about missing productivity reports and Recovery Care Plans on March 11, 2015. (Windholz Decl., Ex. Q). The warning recites that Plaintiff "has been resistant to training and has not sought supervision or training from her supervisor." She was suspended for three days and was told that a "failure … to demonstrate immediate improvement will result in her termination." (*Id.*). About one month later, on April 8, 2015, Plaintiff took disability leave from ACI. (Pl. 56.1 Opp.

---

[8]     Neither side has introduced evidence of this warning, but it appears that a copy was shown to Plaintiff at her deposition, at which time Plaintiff acknowledged both the contents of the form and her refusal to sign it. (Pl. Dep. 227:20-229:18).

¶ 70).  She was administratively terminated one year later when she failed to

return.  (Windholz Decl., Ex. T).

### 6.    Disciplinary Warnings Issued to Other ACI CASACs

Plaintiff concedes that she was not the only CASAC at ACI to be

disciplined for non-compliance with the new patient forms.  (Pl. Dep. 206:9-

13).[9]  Ewa Bruce — a 48-year-old Caucasian woman — received disciplinary

warnings on October 14, 2014, and January 8, 2015, for failing to complete

patient discharge plans and daily productivity sheets in a timely fashion.

(Lopresti Decl. ¶ 8; *id.* at Ex. A; Pl. 56.1 Opp. ¶ 48).  Genesis Edmond — a 29-

year-old African-American woman — similarly received a verbal warning on

January 8, 2015, for failure to complete daily productivity sheets.  (Lopresti

Decl. ¶ 8; *id.* at Ex. A; Pl. 56.1 Opp. ¶ 49).

### 7.    Plaintiff's Requests for Leave

Separately, Plaintiff alleges she requested vacation and personal time

from ACI and her requests were denied.  (FAC 5).  Plaintiff applied for five days

of vacation time on January 22, 2015, but the request was denied because

---

[9]     Plaintiff disputes this fact in her Counterstatement — and, indeed, recants her deposition testimony confirming this fact as "no longer ... correct."  (Pl. 56.1 Opp. ¶ 49).  Elsewhere in her Reply, however, she admits that Edmonds and Bruce were reprimanded for their failures to timely complete patient paperwork.  (*Id.* at ¶¶ 48, 49).  And the documentary evidence cited above corroborates that account.  The Court will deem these facts to be undisputed for purposes of this motion.  *See Brown* v. *Henderson*, 257 F.3d 246, 253 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony."); *Mack* v. *United States*, 814 F.2d 120, 124-25 (2d Cir. 1987) ("It is well-settled in [the Second] [C]ircuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.").

Plaintiff had "[taken] 2 weeks off in December," and because ACI was "down 3 counselors." (Windholz Decl., Ex. R). Plaintiff applied for two days of personal time on March 4, 2015, and this, too, was denied because ACI was "short staffed" and had "no coverage." (*Id.* at Ex. S).

Plaintiff states that ACI employee Ewa Bruce — who is Caucasian — was permitted to take time off during a different time period. (*See* Pl. 56.1 Opp. ¶ 67; Pl. Dep. 241:8-10; *see also* Lopresti Decl. ¶ 8). But Plaintiff concedes that ACI was short-staffed at the time she requested to take vacation. (Pl. Dep. 241:22-242:7).

### 8.    Plaintiff's Termination

On April 8, 2015, Plaintiff left ACI on medical leave. (Pl. 56.1 Opp. ¶ 70). Under the collective bargaining agreement between ACI and Plaintiff's union, she was entitled to one year of leave. (Lopresti Decl., Ex. B). Because Plaintiff believed that she was not capable of returning to work after one year, she was administratively terminated on April 9, 2016. (Pl. 56.1 Opp. ¶ 73; Pl. Dep. 259:2-4).

Plaintiff's Amended Complaint alleges that she was terminated, along with other ACI employees, for discriminatory reasons relating to her age and race. (FAC 5). Notably, Plaintiff did not allege that she was wrongfully terminated because of her disability. Rather, Plaintiff raises only a "failure to accommodate" claim under the ADA. (*Id.* at 3). And at her deposition, Plaintiff acknowledged that she was *not* bringing a wrongful termination claim under the ADA. (Pl. Dep. 258:23-259:8). In her opposition papers, Plaintiff changes

course, alleging for the first time that her termination was discriminatory because ACI caused a further deterioration in her eyesight, which precluded her from returning to work in 2016. (Pl. 56.1 Opp. ¶ 74).

**B. Procedural Background**

On February 6, 2015, Plaintiff filed her Verified Complaint with the NYSDHR against ACI. (Windholz Decl., Ex. B). On August 7, 2015, the NYSDHR dismissed Plaintiff's claim. (*Id.* at Ex. C). Plaintiff commenced this action, *pro se*, a few months later on December 21, 2015, alleging that ACI had violated her rights under the ADA, the ADEA, and Title VII. (Dkt. #2). Two months later, she amended her complaint to include a claim of discrimination under the NYCHRL. (FAC 1-7).

Defendant ACI filed the instant motion for summary judgment on January 9, 2017. (Dkt. #43). Plaintiff filed her opposition papers on March 1, 2017 (Dkt. #54), and briefing concluded with the filing of Defendants' reply brief on March 15, 2017 (Dkt. #57).

## DISCUSSION

**A. Plaintiff's Local Civil Rule 56.1 Opposition Statement**

Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York applies to this case. In relevant part, the rule requires that "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party," and, further, that "each numbered paragraph in the statement of material facts set forth in

12

the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." L. Civ. R. 56.1 (b)-(c).

Plaintiff, who is proceeding *pro se*, properly submitted an opposition to Defendants' Rule 56.1 Statement of Undisputed Material Facts stating whether she admits or disputes each point offered by Defendants. (Dkt. #56). While Plaintiff has done a commendable job in her opposition, several of her objections fail to respond to the material fact offered by Defendants. (*See, e.g.*, Pl. 56.1 Opp. ¶¶ 41, 45, 56). The Court will consider Plaintiff's Local Rule 56.1 Statement, but where (i) Plaintiff's objection does not attack the point being offered by Defendants, and (ii) Defendants' proffered material fact is corroborated by the weight of documentary and testimonial evidence in the record, the Court will deem that fact to be undisputed for purposes of this motion. *See* L. Civ. R. 56.1(c) (requiring that each material fact offered by the moving party be "specifically controverted"). In so doing, the Court has taken note of Plaintiff's *pro se* status and conducted a searching review of the record before deeming a statement to be undisputed. *Cf. Holtz* v. *Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," and may "opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement.").

## B. Motions for Summary Judgment Under Rule 56

Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986) (internal citation and quotation marks omitted); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).[10] A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), the party opposing summary judgment

---

[10] The Court is aware that the 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact. *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination."). As of this past year, the Second Circuit continues to use both formulations. *Compare, e.g.*, *Smith* v. *Barnesandnoble.com, LLC*, 839 F.3d 163, 166 (2d Cir. 2016) ("The moving party bears the burden to demonstrate the absence of any genuine issues of material fact."), *with, e.g.*, *Harris* v. *Miller*, 818 F.3d 49, 54 (2d Cir. 2016) ("[W]e conclude that there are genuine disputes of material fact[.]"). Indeed, the Circuit sometimes uses the terms interchangeably within the same decision. *Compare, e.g.*, *Cross Commerce Media, Inc.* v. *Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) ("[T]here is a genuine dispute of material fact[.]"), *with, e.g.*, *id.* at 168 ("We therefore think that [the nonmovant] has raised a genuine issue of material fact[.]"). The Court at times relies on the traditional phrasing in this Opinion.

"must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). To that end, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, a court must evaluate all facts "in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Beyer* v. *Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (internal quotation marks and citation omitted). In keeping with the special solicitude offered *pro se* litigants, a district court evaluating a motion for summary judgment in a *pro se* case must construe the submissions "to raise the strongest arguments they suggest." *Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006). A court need not, however, give a *pro se* party boundless latitude and must demand more than "conclusory allegations or denials" to overcome summary judgment. *Kennedy* v. *Arias*, No. 12 Civ. 4166 (KPF), 2017 WL 2895901, at *7 (S.D.N.Y. July 5, 2017). The party opposing summary judgment must still produce "concrete particulars" showing which material facts remain in dispute. *Pucino* v. *Verizon Wireless Commc'n, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010) (internal citation omitted).

The Second Circuit is clear that district courts must exercise caution when "granting summary judgment to an employer in a discrimination claim where … the merits turn on a dispute as to the employer's intent." *Gorzynski* v. *JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (quoting *Holcomb* v. *Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)). Because "direct evidence of [discriminatory] intent will only rarely be available," the court must conduct a searching review of the record, including affidavits and depositions, for "circumstantial proof which, if believed, would show discrimination." *Id.*

## C. Defendants' Motion for Summary Judgment Is Denied in Part and Granted in Part

In the Amended Complaint, Plaintiff explicitly raises a failure to accommodate claim under the ADA and discrimination claims under the ADEA, Title VII, and the NYCHRL.[11] Construing Plaintiff's claims as liberally as the law and the record permit, the Court denies Defendants' motion as to Plaintiff's failure to accommodate claim against ACI under the ADA and the NYCHRL, and grants it as to Plaintiff's discrimination claims against ACI under Title VII, the ADEA, the NYSHRL, and the NYCHRL, and all claims against Zysman.[12]

---

[11] Plaintiff filed her Complaint using a fillable form complaint for *pro se* employment discrimination cases provided by the United States District Court for the Southern District of New York. This form lists several claims under federal, state, and local law, and a plaintiff can check boxes to indicate the claims she wishes to raise. Plaintiff's initial Complaint only checked boxes for the ADA, the ADEA, and Title VII. Her Amended Complaint added the box for the NYCHRL, but left blank the box for the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (the "NYSHRL"). In keeping with the Second Circuit's recent decision in *McLeod* v. *Jewish Guild for the Blind*, the Court will construe Plaintiff's Amended Complaint to include a claim under the NYSHRL. *See* 864 F.3d 154, 157 (2d Cir. 2017).

[12] As noted in Section A.8, *supra*, Plaintiff's Amended Complaint frames her claim under the ADA as one for failure to accommodate, not for disparate treatment or wrongful termination. (FAC 2). By contrast, she pleads specific facts to support a claim that she

1.  **Fact Issues Preclude Summary Judgment on Plaintiff's Failure to Accommodate Claims Against ACI Under the ADA and the NYCHRL**

    a.  **Applicable Law**

The ADA's prohibition on disability discrimination extends to "an employer's failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified employee with a disability." *Wenc* v. *New London Bd. of Educ.*, — F. App'x —, 2017 WL 3587485, at *1 (2d Cir. Aug. 21, 2017) (summary order) (quoting *McBride* v. *BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009)). The Court looks first to whether Plaintiff satisfies her burden to raise a *prima facie* case of failure to accommodate, which requires a showing that "[i] plaintiff is a person with a disability under the meaning of the ADA; [ii] an employer covered by the statute had notice of [the plaintiff's] disability; [iii] with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and [iv] the

---

was discriminated against and wrongfully terminated on the basis of her race and age. Plaintiff equivocates somewhat in her deposition testimony, but ultimately acknowledges that she is not claiming termination because of her disability. (Pl. Dep. 258:23-259:8; *but see id.* at 250:2-251:11). In her opposition brief, Plaintiff discusses facts "relating to [her] ADA claim for failure to accommodate" and "race and age discrimination." (Pl. Opp. 2-6). Nevertheless, she claims in her Counterstatement to "allege her termination was discrimination" because ACI caused the deterioration in her eyesight that prevented her from returning to work. (Pl. 56.1 Opp. ¶ 74).

The Court is mindful of its obligation to afford a "special solicitude" to *pro se* parties, but finds that even a liberal construction of the pleadings does not admit of a claim for wrongful termination under the ADA. The Court need not address claims raised for the first time in opposition to a motion for summary judgment and in contravention of Plaintiff's own prior testimony. *Nassry* v. *St. Luke's Roosevelt Hosp.*, No. 13 Civ. 4719 (GHW), 2016 WL 1274576, at *10 (S.D.N.Y. Mar. 31, 2016) (collecting cases); *Mack*, 814 F.2d at 124-25 (finding that a party may not avoid summary judgment by contradicting her own prior deposition testimony).

17

employer has refused to make such accommodations." *McMillan* v. *City of N.Y.*, 711 F.3d 120, 125-25 (2d Cir. 2013) (internal quotation marks omitted).[13]

When evaluating the reasonableness of an accommodation, courts in the Second Circuit look first to whether the employee has shown the "existence of a plausible accommodation, the costs of which, facially, do not exceed the benefits," after which the burden shifts to the employer to show that the accommodation would be an undue hardship. *Borkowski* v. *Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995); *see also Noll* v. *Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (concluding that when an employer knows of an employee's disability, the ADA and the NYSHRL require the employer to provide a "reasonable accommodation ... unless the accommodation would impose an undue hardship on the employer"). An accommodation can include "alteration of the facilities in which a job is performed" and "acquisition of devices to assist the performance of job duties." *McBride*, 583 F.3d at 97. An accommodation is considered an undue hardship if it "requir[es] significant difficulty or expense,"

---

[13]    In passing, Defendants suggest that Plaintiff's claim fails without evidence of Defendants' discriminatory intent. The Court finds that the necessity of such a showing is not clear. There are, as Defendants note, some district court opinions where such a showing was required. (Def. Br. 24 (citing *Logan* v. *Matveevskii*, 57 F. Supp. 3d 234, 258 (S.D.N.Y. 2014); *Hamedl* v. *Weiland*, No. 10 Civ. 2738 (SJF), 2012 WL 3903499, at *7 (E.D.N.Y. Sept. 6, 2012))). But the Second Circuit has not made discriminatory intent a required element of a failure to accommodate claim. The Tenth Circuit recently noted that no such requirement exists. *Punt* v. *Kelly Services*, 862 F.3d 1040, 1048 (10th Cir. 2017) ("There is at least one type of ADA claim, however, which does not require any evidence of discriminatory intent, whether direct or circumstantial: a failure-to-accommodate claim."). Even if discriminatory intent were a required element of a failure to accommodate claim, the record suggests genuine disputes regarding Defendants' inexplicable delays in providing accommodations as well as the sufficiency and content of the trainings provided to Plaintiff.

which renders it presumptively unreasonable.  *McMillan*, 711 F.3d at 128 (quoting 42 U.S.C. § 12111(10)(A)).

Where an employee claims that her employer failed to implement an accommodation, she must proffer evidence of some reasonable accommodation that would be effective in helping her perform her job.  *Borkowski*, 63 F.3d at 139.  That said, the employer's accommodation need not be perfect or even preferred by the employee, but "[t]he reasonableness of an employer's accommodation is a 'fact-specific' question that often must be resolved by the factfinder."  *Noll*, 787 F.3d at 94-95 (quoting *Wernick* v. *Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 385 (2d Cir. 1996)).  An employer that has already accommodated the employee's disability is entitled to summary judgment on a failure to accommodate claim where the undisputed record shows "the existing accommodation is plainly reasonable."  *Noll*, 787 F.3d at 94.

"[F]ailure to accommodate is a type of disability discrimination that can properly be raised under the NYCHRL."  *LeBlanc* v. *United Parcel Serv.*, No. 11 Civ. 6983 (KPF), 2014 WL 1407706, at *17 (S.D.N.Y. April 11, 2014).  While the elements of the *prima facie* case mirror those under the ADA, Plaintiff's burden under the NYCHRL is lower: Plaintiff must show she was treated "less well" than her colleagues "at least in part for a discriminatory reason."  *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013).  Summary judgment is only proper where "the record establishes as a matter of law that 'discrimination played no role' in [the employer's] actions."  *Id.*

Under the NYCHRL, all accommodations are presumed reasonable until proven otherwise. *LeBlanc*, 2014 WL 1407706, at *18 (citing N.Y. City Admin. Code § 8-102(18)). An employer can overcome this presumption by showing the accommodation would be an undue burden or that the employee could not perform her duties even with the accommodation. *Id.* Once an employee alerts her employer that she is disabled and requests an accommodation, the employer is required to work with the employee to arrive at a reasonable accommodation. *Id.* (citing 9 NYCRR § 466.11(j)(4)). And thus follows the dispositive question here under both the ADA and the NYCHRL: Is there a genuine dispute as to whether Defendants' offered accommodation — allowing Plaintiff to fill out forms manually — was reasonable?

### b.  Analysis

Defendants concede that Plaintiff was disabled and that ACI was aware of Plaintiff's macular degeneration. (Def. 56.1 ¶ 25). Defendants argue they provided a reasonable accommodation by permitting Plaintiff to use a CCTV monitor — which, they acknowledge, she secured on her own — to fill out the paperwork that CASACs were required to complete. (*Id.* at ¶ 26). While Plaintiff agrees this accommodation was initially sufficient, she argues that after ACI implemented new electronic forms in 2014, she needed two new accommodations: (i) software that could enlarge the text of the new forms on her computer, and (ii) training sessions during which she could view both hard copy and electronic documents in order to understand ACI's new forms. (*Id.* at ¶ 27; Pl. Opp. 2). The Court finds that Plaintiff has raised a genuine dispute of

fact as to the reasonableness of Defendants' accommodations.  *Cf. McBride*,

583 F.3d at 97-98 (holding plaintiff's failure to identify any reasonable and

effective accommodations warranted grant of summary judgment for

defendants).[14]

*First*, the record is murky, at best, about why Defendants did not

successfully install ZoomText software on Plaintiff's computer after ACI

switched to an electronic paperwork system in 2013.  Plaintiff claims that it

took ACI one year to purchase a copy of the software following her request and

another six months for ACI's technology staff to attempt, unsuccessfully, to

install it.  (Pl. 56.1 Opp. ¶ 30).  Plaintiff testified at her deposition that,

eventually, ACI installed ZoomText but the program never functioned properly.

(Pl. Dep. 62:13-65:24).  She further testified that she has ZoomText on her

home computer, and that it enables her to view the contents of her computer

and perform functions like reading emails.  (*Id.* at 247:12-20).  Defendants do

---

[14]     Plaintiff has not raised a claim of failure to engage in an "interactive process," but the
Court considers it nonetheless and finds that such a claim is not supported by this
record.  *See McBride* v. *BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 101 (2d Cir.
2009).  The Second Circuit has recently clarified that, while an employer's failure to
engage in an interactive process does not, on its own, form a claim under the ADA,
evidence of such a failure can be offered to show disability discrimination.  *Sheng* v.
*M&TBank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017).  Construing Plaintiff's claims with the
liberality the law requires, the Court finds that Plaintiff does not allege deficiencies in
an interactive process, but rather a failure to accommodate her disability.  Here, an
interactive process was not needed to determine what accommodations would help
Plaintiff overcome her disability.  Plaintiff requested two accommodations: software that
would enlarge her computer's screen and training where she could see the documents.
There is no argument on either side that other accommodations were or should have
been discussed.  *Cf. Brady* v. *Wal-Mart Stores, Inc.*, 531 F.3d 127,135-36 (2d Cir. 2008)
(finding that an interactive process is required under the ADA where the employee does
not request a specific accommodation).  On these facts, the Court finds that no
interactive process was needed.

not offer any evidence that installing ZoomText, or comparable software, would have imposed an undue hardship.

*Second*, there are disputed facts regarding the sufficiency of ACI's training on the new patient forms. As the Court reviewed above, the parties dispute the number of trainings Plaintiff attended and the effectiveness of each, given Plaintiff's inability to see the patient forms being discussed in the sessions she attended without her CCTV monitor. *See supra* at 5-9. Plaintiff has shown that each time she was disciplined for her improper paperwork she refused to sign the forms, believing they were discriminatory. (*See* Windholz Decl., Ex. J, K, L, M, O, Q). And the record demonstrates that it was not until March 3, 2015 — well after she began receiving warnings from ACI about her deficient paperwork — that she was given a training session where she could see the forms. (Windholz Decl., Ex. P; *see* Pl. 56.1 Opp. ¶ 59). It is not clear from the record whether Plaintiff notified ACI that she could not see the forms during earlier trainings but, after a searching review of the record, the Court finds sufficient evidence to suggest that she did. (*See, e.g.*, Pl. Dep. 157:20-158:16; Pl. 56.1 Opp. ¶ 37). Defendants have introduced no evidence that providing Plaintiff with individual training sessions in a setting that could accommodate her disability would have imposed an undue hardship.

Defendants have also failed to prove that the accommodation they provided was plainly reasonable and, thus, are not entitled to summary judgment. *See Noll*, 787 F.3d at 94, 98. Instead of explaining why ACI could not install software to enable Plaintiff to use her computer, Defendants argue

their failure to do so "is of no consequence since ACI allowed Plaintiff to continue completing her forms manually." (Def. Br. 22). But ACI's failure *is* of consequence if it resulted in an ineffectual — and thus presumptively unreasonable — accommodation that caused Plaintiff to be disciplined. *See* 29 C.F.R. § 1630.2(o)(1)(ii) (defining a "reasonable accommodation" as one that allows a disabled individual to "perform the essential functions of that position"); *see also Noll*, 787 F.3d at 94. Defendants similarly fail to provide any explanation about why it would be an undue burden to provide training for Plaintiff in a setting where she could see. Instead, they argue that Plaintiff could hear what was being discussed at the training sessions, and this obviated the need for an accommodation. (Def. Br. 7). The Court disagrees.

Plaintiff argues that she was not able to complete the newer, more complicated patient forms by hand as quickly as her co-workers could on a computer, and that, in consequence, she could not submit her paperwork in the required timeframe. (Pl. 56.1 Opp. ¶¶ 51, 56). This is the precise failing for which she was repeatedly reprimanded by ACI. (*See* Windholz Decl., Ex. J, K, L, M, O, Q). Defendants argue, perplexingly, that Plaintiff was disciplined not for her productivity but for the "quality of [her] work" — specifically, her "failure to complete required documentation within times required by OASAS" and "incomplete documentation." (Def. Reply 4). Framing Plaintiff's inefficiency as a work-quality issue is too clever by half, and, in any event, wholly unavailing in light of the record evidence suggesting that Plaintiff's trouble in performing

her job was a direct consequence of ACI's failure to accommodate her disability.

Defendants correctly point out that "[e]mployees are not entitled to hold out for the most beneficial accommodation." (Def. Br. 23 (quoting *Tse* v. *N.Y. Univ.*, No. 10 Civ. 7207 (DAB), 2013 WL 5288848, at *11 (S.D.N.Y. Sept. 19, 2013))); *see also Baker* v. *The Home Depot*, 445 F.3d 541, 548 (2d Cir. 2006). While true, this misses the point: Plaintiff may not be entitled to a perfect accommodation, but she is entitled to an effective one that enables her to perform the essential functions of a CASAC, such as maintaining "proper record keeping [] and documentation for the patient's treatment plan." (Def. 56.1 ¶ 14). *See Borkowski*, 63 F.3d at 139. Plaintiff has raised a genuine dispute as to whether Defendants' accommodation was effective and, thus, reasonable. And because Plaintiff has met her *prima facie* burden and Defendants have not demonstrated that effective accommodations would be an undue hardship, Defendant ACI is not entitled to summary judgment as to Plaintiff's failure to accommodate claims under the ADA and the NYCHRL.

### c. Plaintiff Has Not Demonstrated Individual Liability Against Zysman Under the NYCHRL

Having found that Plaintiff's failure to accommodate claim under the NYCHRL survives summary judgment, the Court must briefly address the issue of individual liability under that statute.[15] The NYCHRL permits liability for an

---

[15] There is no individual liability for this claim under the ADA. *See, e.g.*, *Ivanov* v. *N.Y. City Trans. Auth.*, No. 13 Civ. 4280 (PKC), 2014 WL 2600230, at *5 (S.D.N.Y. June 5, 2014) (noting that the ADA restricts the definition of "employers" to entities and does not include individuals). The same is true of Plaintiff's claims under Title VII and the

employer or "an employee or agent thereof … regardless of ownership or decisionmaking power." *Malena* v. *Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012).  Under the NYCHRL, an individual can be liable for discrimination only if there is evidence that he or she "actually participates" in the alleged discriminatory conduct.  *Id.*  There is no such evidence here. Plaintiff has not put any facts in the record to support a finding that Defendant Zysman participated in, or was even aware of, the conversations about Plaintiff's requested accommodations or disciplinary infractions.  There is no basis from the undisputed facts in the record for a finding of individual liability for failure to accommodate under the NYCHRL.

### 3.  No Genuine Dispute Exists Regarding Plaintiff's Race- and Age-Discrimination Claims

#### a.  Applicable Law

To assess Plaintiff's race- and age-discrimination claims under Title VII, the ADEA, and the NYSHRL, the Court must travel the well-worn path of the *McDonnell Douglas* v. *Green* burden-shifting test:  To prevail, an employee must first establish a *prima facie* case of discrimination; the burden then shifts to the employer to "'articulate some legitimate, nondiscriminatory reason' for the disparate treatment"; and, finally, the burden shifts back to the employee to show that the employer's reasons were mere pretext for discrimination.  *Vega* v. *Hempstead Free Sch. Dist.*, 801 F.3d 72, 82-83 (2d Cir. 2015) (quoting *McDonnell Douglas* v. *Green*, 411 U.S. 792, 802 (1973)); *see Weinstock* v.

---

ADEA.  *Id.*; *see also Tomka* v. *Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc.* v. *Ellerth*, 524 U.S. 742 (1998).

*Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) (finding that a NYSHRL

claim can be evaluated according to the same standard as a Title VII claim);

*Gorzynski*, 596 F.3d at 106 (applying the *McDonnell Douglas* framework to

ADEA claim).  To establish a *prima facie* case of discrimination, Plaintiff must

show "[i] she is a member of a protected class; [ii] she is qualified for her

position; [iii] she suffered an adverse employment action; and [iv] the

circumstances give rise to an inference of discrimination."  *Weinstock*, 224 F.3d

at 42.

　　　An employee suffers an "adverse employment action if he or she endures

a materially adverse change in the terms and conditions of employment" that

amounts to more "than a mere inconvenience."  *Vega*, 801 F.3d at 85 (quoting

*Galabya* v. *N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *Terry* v.

*Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).  An inference of discrimination can

arise from "the employer's criticism of the plaintiff's performance in ethnically

degrading terms … invidious comments about others in the employee's

protected group[,] or the more favorable treatment of employees not in the

protected group[,] or the sequence of events leading to the plaintiff's discharge."

*Littlejohn* v. *City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015) (internal quotation

marks omitted).  In evaluating Plaintiff's claim, the Court is mindful of the

caution the Second Circuit requires of district courts when granting summary

judgment in employment discrimination cases, *see Gorzynski*, 596 F.3d at 101,

but observes that, nevertheless, "plaintiff at all times bears the ultimate burden

of proof" on this score, *Belfi* v. *Prendergast*, 191 F.3d 129, 140 (2d Cir. 1999).

By contrast, the Second Circuit's decision in *Mihalik* v. *Credit Agricole Cheuveux N. Am., Inc.*, guides the Court's analysis of Plaintiff's claims under the NYCHRL. *See* 715 F.3d at 108-09. To prevail, Plaintiff must only show that ACI "treated her less well, at least in part for a discriminatory reason." *Id.* at 110 n.8. The burden then shifts to Defendants to present "legitimate non-discriminatory motives to show the conduct was not caused by discrimination, but [they are] entitled to summary judgment on this basis only if the record establishes as a matter of law that 'discrimination played *no* role' in its actions." *Id.* (quoting *Williams* v. *N.Y. City Hous. Auth.*, 872 N.Y.S.2d 27, 38 (1st Dep't 2009)). In effect, the analysis mirrors the *McDonnell Douglas* framework, but accords Plaintiff a lesser burden of showing only that Defendants' actions were based, in part, on discrimination. *LeBlanc*, 2014 WL 1407706, at *12.

      **b.**    **Analysis**

            **i.**    **Plaintiff Has Failed to Demonstrate a Prima Facie Case as to ACI**

Defendants do not contest Plaintiff's protected status or qualification for her position (Def. Br. 13-14), but argue instead that she cannot prove she suffered an adverse employment action or that Defendants' proffered reasons for her disparate treatment were pretextual (*id.* at 13-20). Plaintiff was disciplined six times, suspended twice (for one and three days, respectively), and placed on a PIP. The Court agrees with Defendants that the warnings and the PIP are not adverse employment actions, insofar as they did not effect a

materially adverse change in the terms of Plaintiff's employment or alter the fundamental nature of Plaintiff's role at ACI. *See Gorman* v. *Covidien, LLC*, 146 F. Supp. 3d 509, 524 (S.D.N.Y. 2015) (finding that placement on a PIP was not a materially adverse employment action).

Courts in this Circuit have found that suspensions can be adverse employment actions, *see Eka* v. *Brookdale Hosp. Med. Ctr.*, No. 14 Civ. 6468 (PKC), — F. Supp. 3d —, 2017 WL 1184129, at *8 (E.D.N.Y. March 29, 2017) (collecting cases), irrespective of whether they are paid or unpaid, *see Brown* v. *City of Syracuse*, 673 F.3d 141, 151 (2d Cir. 2012).[16]  Even so, there is no evidence that Plaintiff's suspensions were anything other than an application of "reasonable disciplinary procedures to an employee." *Joseph* v. *Leavitt*, 465 F.3d 87, 92 n.1 (2d Cir. 2006).  CASACs were obligated by ACI policy to submit forms within a certain timeframe, and Plaintiff was not the only employee disciplined for a failure to comply.  (Pl. 56.1 Opp. ¶ 42; Pl. Dep. 45:21-24; Lopresti Decl., Ex. A).  On this record, the Court cannot find a genuine dispute that Plaintiff's suspensions were adverse employment actions.

Plaintiff complains forcefully about her denied vacation and personal time off, but these denials were "mere inconvenience[s]" that do not rise to the level of adverse employment actions.  *See Chukwuka* v. *City of N.Y.*, 795 F. Supp. 2d 256, 261 (S.D.N.Y. 2011) ("[T]he denial of vacation time does not generally rise to the level of an adverse employment action.").[17]  At the time of

---

[16]    The record does not reflect whether Plaintiff's suspensions were paid or unpaid.

[17]    It is not clear whether Plaintiff also intends to raise a claim that ACI's failure to provide adequate training was racially discriminatory.  Plaintiff stated at her deposition that she

Plaintiff's first denied request, she had recently returned from a vacation and was simply denied further time off thereafter. (Windholz Decl., Ex. R). Plaintiff has also introduced nothing to call into question ACI's explanation of short-staffing. Thus, Plaintiff's allegations cannot support a conclusion that these denials effected a material change to her employment at ACI in any way.

Even assuming the warnings, suspensions, and PIP were adverse employment actions, which they were not, Plaintiff's *prima facie* claim still falters, as she has failed to raise a triable issue that these actions gave rise to an inference of racial discrimination. Plaintiff conceded at her deposition that no one at ACI had ever made racially insensitive remarks to her. (Pl. Dep. 114:2-7). She argues now that the only other employee disciplined for her same infraction was also African-American, and disputes the evidence that a Caucasian employee was similarly disciplined. (Pl. Opp. 10). These conclusory assertions are unpersuasive: Defendants have shown through documentary evidence that a Caucasian employee was disciplined, twice, for failing to timely submit patient paperwork. (Lopresti Decl., Ex. A). It is not clear from the record whether there were additional employees outside Plaintiff's protected class who committed this infraction, but, significantly,

---

does not. (Pl. Dep. 113:22-114:1). But, to the extent she does, Plaintiff has put forth no evidence suggesting that this amounted to an adverse employment action or that it was the result of racial animus. In fact, Plaintiff's Amended Complaint supports Defendants' position that the group of CASACs who received individualized training included several African-American employees. (FAC, Ex. B; Pl. 56.1 Opp. ¶ 40). There is simply not enough evidence in the record to show a dispute as to any material fact on this claim.

Plaintiff has not submitted evidence to show more favorable treatment of employees outside her protected class.

The evidence in the record overwhelms any discriminatory inference to be drawn from Plaintiff's assertion of race discrimination. Of the 29 CASACs hired from 2014 to 2016, the majority were African-American and only two were Caucasian. (Lopresti Supp. Decl. ¶ 7). From April 2015 — the time when Plaintiff left ACI — through 2016, ACI hired six CASACs, four of whom were African-American. (*Id.* at Ex. C).[18] Had Defendants intended to discriminate against Plaintiff on the basis of race, it makes no sense that they would continue to hire African-American counselors after her departure. *Dellaporte* v. *City Univ. of N.Y.*, 998 F. Supp. 3d 214, 227-28 (S.D.N.Y. 2014).

Plaintiff further argues that, toward the end of her tenure, ACI began hiring "lighter[-]skin[ned]" employees. (FAC 6). Courts have found that an employer's preferential treatment of employees with lighter skin tones — even within a plaintiff's own protected class — can support a race-discrimination claim under Title VII. *See, e.g.*, *Govia* v. *Century 21, Inc.*, 140 F. Supp. 2d 323, 324 (S.D.N.Y. 2001). However, when asked at her deposition to name examples of lighter-skinned ACI employees who had been hired in the latter part of her tenure, Plaintiff could not name anyone. (Pl. Dep. 103:25-104:10).[19] Instead,

---

[18]     Plaintiff disputes Defendants' proffered employment statistics, but the evidence she cites in support of her objection corroborates Defendants' account that ACI was racially diverse during the time of Plaintiff's employment and continued to be after her departure. (*Compare* Pl. 56.1 Opp. ¶ 78, *with* Lopresti Supp. Decl., Ex. C).

[19]     At one point, Plaintiff pointed to Amy Sirken, who was present at the deposition, and she later mentioned Katrina Daae and Farhaana Zainul. (Pl. Dep. 104:11-15, 109:13-18).

Plaintiff stated that she observed nurses in each department of ACI who had lighter skin tones than she. (Pl. Dep. 104:22-105:2). She conceded that she was not familiar with the circumstances surrounding the hiring of any new nurses; she did not know who else had applied for those positions; and she was unaware of the qualifications of the hired nurses compared to other applicants. (*Id.* at 105:3-22). When pressed, Plaintiff could not say whether she had observed this same trend of favoring lighter-skinned individuals in the hiring of other CASACs. (*Id.* at 108:22-109:12).

In her Counterstatement, Plaintiff disputes Defendants' contention that, between 2014 and 2016, it predominantly hired African-American individuals to be CASACs. (Pl. 56.1 Opp. ¶ 78). In support, Plaintiff cites to a chart appended to the Supplemental Declaration of Dolores Lopresti, which chart Plaintiff claims demonstrates that "there are now more younger and lighter[-]skin[ned]" employees at ACI. (*Id.*). But the chart does not contain any data regarding the skin tone of the ACI employees referenced therein beyond noting the race with which they identify. (Lopresti Supp. Decl., Ex. C). Plaintiff also appends an excerpt from this list containing employees who, she alleges, are lighter-skinned. (Pl. 56.1 Opp. ¶ 78). But Plaintiff's list (which, it bears noting, includes employees identified as African-American, white, Hispanic, and Native American) provides no more granularity than Defendants' chart, and thus does not support her claim. (*Id.*). Finally, Plaintiff disputes Defendants' contention that Plaintiff's department at ACI was, at all times during Plaintiff's employment, predominantly African-American. (*Id.* at ¶ 79). Plaintiff retorts

that she had "co-workers … that were … lighter[-]skin[ned] than her," including Jenifer Suzanne Rafael. (*Id.*). The record does not reflect Rafael's race, skin tone, hiring date, or the background of any employee she may have replaced.

Defendants have not proffered any evidence to rebut directly Plaintiff's claim that Defendants favored lighter-skinned individuals in hiring or employment actions, nor have they addressed the claim in their briefs. Nevertheless, the Court finds insufficient evidence in the record to support Plaintiff's claim of race discrimination on this basis. Moreover, even if the record disclosed a genuine dispute as to whether ACI tended to hire individuals — both within and without Plaintiff's protected class — with lighter skin tones, this evidence is not enough to raise an inference of discrimination *as to Plaintiff*. Plaintiff has put forth no evidence that this alleged trend in ACI's hiring had anything to do with her termination — which, by Plaintiff's own admission, related to her physical inability to return to work. (Pl. Dep. 258:17-259:4). Plaintiff does not allege that she or any other similarly-situated CASACs were replaced by individuals with lighter skin tones. There is simply no evidence of discrimination against Plaintiff because of her darker skin tone.

Plaintiff's age-discrimination claim fares no better. Her claim centers on a broad accusation that Defendant Zysman's practice as CEO was to fire counselors over the age of 40 who had been at ACI for over 10 years. In support of this claim, she points to a comment made by Zysman at a meeting that "ACI is the facility where you get your experience and you move on." (Pl.

Dep. 101:7-13).  There is no indication that this remark was made directly to or about Plaintiff (or, indeed, anyone in her protected class) and, thus, "is not enough to create an inference of discriminatory motive."  *Ross* v. *New Canaan Envtl. Comm'n*, 532 F. App'x 12 (2d Cir. 2013) (summary order) (citing *Abdu-Brisson* v. *Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001)).  And in any case, Plaintiff's claim is refuted by the clear evidence in the record that between 2014 and 2016, ACI hired 29 CASACs, 25 of whom were over the age of 40.  (Lopresti Supp. Decl. ¶ 7).  Of the six CASACs hired after Plaintiff's departure, three were over the age of 50.  (*Id.* at Ex. C).  Again, no reasonable jury could find that ACI would discriminate against Plaintiff because of her age, only to hire additional counselors in her protected class thereafter.  There is simply no inference of age discrimination supported by the record.

### ii.     Plaintiff Cannot Call Into Question ACI's Legitimate, Non-Discriminatory Reasons

Because Plaintiff does not meet her burden on the fourth prong of a *prima facie* claim, the burden never shifts to ACI to prove legitimate, non-discriminatory reasons for its actions.  Even so, the Court reviews the record and finds that Defendants would be able to meet this burden. Defendants have proffered specific evidence that Plaintiff was disciplined for her failure to submit paperwork in the required time frame.  And while there may be a question as to whether this explanation instantiates ACI's failure to accommodate Plaintiff's disability, there is *no* indication that the explanation evidences discrimination on the basis of race or age.  Plaintiff was required by

ACI policy to submit paperwork within a certain timeframe; when she failed to do this, Defendants issued a warning and, later, suspensions when the problem persisted. (Pl. 56.1 Opp. ¶ 42, Windholz Decl. Ex. J, K, L, M, Q). Defendants have further shown that ACI articulated legitimate reasons for denying Plaintiff's requests for time off: ACI needed to staff its facility with a sufficient number of counselors and denied Plaintiff's requests because she had just returned from vacation and ACI would have been short-staffed otherwise. (Windholz Decl., Ex. R, S).

### iii. Plaintiff Has Not Shown Pretext

Finally, Plaintiff has not shown that any of Defendants' proffered reasons for their disciplinary actions and denials of leave requests are pretext for race or age discrimination. A plaintiff can demonstrate pretext where she shows that "the reason supplied was not the true reason for the unfavorable employment decision." *Ibrahim* v. *N.Y. State Dept. of Health, Office of Health Sys. Mgmt.*, 904 F.2d 161, 168 (2d Cir. 1990) (internal quotation marks omitted). There is no evidence in the record to show that Defendants' reasons were pretext for racially motivated discrimination. Again, Defendants' clear reasons for disciplining Plaintiff may implicate issues under the ADA, but there is no reason to believe that they masked racial animus or were intended to develop a non-discriminatory record. *Cf. Digilov* v. *JPMorgan Chase Bank, N.A.*, No. 13 Civ. 975 (KPF), 2015 WL 685178, at *14-15 (S.D.N.Y. Feb. 18, 2015) (finding pretext where employer's reasons were not clear and appeared to paper over true, discriminatory reasons).

Notably, under the ADEA, Plaintiff must show that her age was a "but-for" cause of Defendants' actions. *Gross* v. *FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). Given Defendants' legitimate, non-discriminatory reasons for disciplining Plaintiff and denying her time off — reasons that are corroborated by the record — Plaintiff cannot demonstrate that her age was the but-for cause of these actions and cannot meet her burden to prove the legitimate reasons were merely pretextual. Accordingly, ACI's motion for summary judgment on Plaintiff's race and age discrimination claims under Title VII, the ADEA, and the NYSHRL is granted.

### iv. Plaintiff's Claims Against ACI Fail Even Under the NYCHRL

The Court must separately, if briefly, examine Plaintiff's race- and age-discrimination claims against ACI under the NYCHRL. As noted *supra,* Plaintiff has failed to raise an inference of discrimination in support of a *prima facie* claim under the *McDonnell Douglas* framework. Under the NYCHRL, she must show only that Defendants actions were based "in part" on discrimination. *LeBlanc*, 2014 WL 1407706, at *12; *see also Mihalik*, 715 F.3d at 110 n.8. That said, the lower burden under the NYCHRL is a burden still, and requires "some evidence from which discrimination can be inferred." *Ben-Levy* v. *Bloomberg L.P.*, 518 F. App'x 17, 19-20 (2d Cir. 2013) (summary order). Even after a searching review of the record, the Court finds no evidence that Plaintiff was treated "less well" at ACI because of her race or age. She has not raised sufficient evidence of any similarly-situated ACI employees who were treated

more favorably than she, *LeBlanc*, 2014 WL 1407706, at *15, nor any evidence that she was treated differently based of her race or her age, *see Mihalik*, 715 F.3d at 111.[20]  Likewise, she has not shown that she was treated less well than even employees within her protected class who had lighter skin tones.  Because the undisputed facts in the record make plain that race and age discrimination played no part in Defendants' actions, Defendant ACI is entitled to summary judgment on Plaintiff's discrimination claims.  *Mihalik*, 715 F.3d at 110 n.8.

> ### v. Plaintiff Has Not Demonstrated Individual Liability Against Zysman for Her Race- and Age-Discrimination Claims Under the NYSHRL and the NYCHRL

Finally, the Court finds that, even if Plaintiff's claims for race and age discrimination under the NYSHRL and the NYCHRL were to survive summary judgment, there would be no basis for individual liability.  Under the NYSHRL, an individual can be held liable if he or she is an "employer," such that he or she has an ownership interest or is a supervisor with the authority to hire and fire employees.  *Pacheco* v. *Comprehensive Pharmacy Servs.*, No. 12 Civ. 1606 (AJN), 2013 WL 6087382, at *17 (S.D.N.Y. Nov. 19, 2013).  The NYCHRL, by contrast, permits liability for an employer or "an employee or agent thereof."  *Malena*, 886 F. Supp. 2d at 366.  Under both statutes, an individual can be

---

[20]     The only evidence that could be construed to meet this burden is Plaintiff's allegation that a Caucasian employee was permitted to take vacation time while Plaintiff was not.  (Pl. 56.1 Opp. ¶ 67).  Plaintiff concedes that ACI was short-staffed at the time she requested leave.  (Pl. Dep. 241:22-242:7).  While the NYCHRL is broader than its federal counterpart, it "is not a general civility code," and "plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive."  *Mihalik* v. *Credit Agricole Cheuvreux N. Am.*, 715 F.3d 102, 110 (2d Cir. 2013) (quoting *Williams* v. *N.Y. City Hous. Auth.*, 872 N.Y.S.2d 27, 40-41 (1st Dep't 2009)).  Plaintiff has failed to meet even this minimal burden here.

liable for discrimination if there is evidence that he or she "actually participates" in the alleged discriminatory conduct. *Id.*

Assuming that Zysman is an "employer" as these statutes define the term, there is simply no evidence that he had any participation in — or even awareness of — the actions of which Plaintiff now complains. Plaintiff alleges facts surrounding a single comment Zysman made as part of her age discrimination claim but, as the Court found above, there is no evidence that this comment was made about or to Plaintiff, or any member of her protected class, and there is no evidence that the comment played any role in any decision regarding Plaintiff's employment. Defendant Zysman's motion for summary judgment as to Plaintiff's claims of race and age discrimination under the NYSHRL and NYCHRL is thus granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. The Court grants summary judgment as to all claims except Plaintiff's claims against ACI for failure to accommodate her disability under the ADA and the NYCHRL. The Clerk of Court is directed to terminate the motion at Docket Entry 43.

The parties are directed to appear for a conference on **September 27, 2017, at 11:00 a.m.**, in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007, to schedule a trial in this matter.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis*

status is denied for the purpose of an appeal.  *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

      SO ORDERED.

Dated:      September 12, 2017
            New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge

---

*A copy of this Order was mailed by Chambers to:*

Georgiana Allen
121 S.E. Duval Avenue
Port St. Lucie, Florida 34983